# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF LOUISIANA
# LAFAYETTE DIVISION

**ROMERO**                                 **CIVIL ACTION NO. 18-00202**

**VERSUS**                                 **JUDGE ROBERT G JAMES**

**SOCIAL SECURITY**                        **MAGISTRATE JUDGE WHITEHURST**
**ADMINISTRATION**

## REPORT AND RECOMMENDATION

Before the Court is an appeal of the Commissioner's finding of non-disability. Considering the administrative record, the briefs of the parties, and the applicable law, the Court finds that the Commissioner's decision should be AFFIRMED and this matter be dismissed with prejudice.

## <u>Administrative Proceedings</u>

The claimant, Michael Brent Romero, fully exhausted his administrative remedies before filing this action in federal court. On June 5, 2014, he filed applications for a period of disability, disability insurance benefits ("DIB") and supplemental security income benefits ("SSI") alleging that he became disabled on February 15, 2009. *R. 20.* His applications were denied. *Id.* He requested a hearing, which was held on March 2, 2016 before Administrative Law Judge Wendy P. Klamm, M.S. *Tr. 46.* The ALJ decided that the claimant was not disabled within the meaning of the Social Security Act from February 15, 2009 (the alleged disability onset date) through November 28, 2016 (the date of the decision). (Tr. 42). Claimant requested review of the decision on January 8, 2016, but the Appeals Council found no basis for review. *Tr. 1-6.* Therefore, the ALJ's decision became

1

the final decision of the Commissioner for the purpose of the Court's review pursuant to 42 U.S.C. § 405(g). Claimant then filed this action seeking review of the Commissioner's decision.

## Summary of Pertinent Facts

At the time of the ALJ's decision, the claimant was 32 years old. He went to the 11th grade, (Tr. 77)*,* and after leaving high school, the claimant worked with his family in the crawfishing business for two seasons and later as a trash collector. *R. 12*. In 2002, he was hired to become an industrial x-ray technician. (Tr. 11). The claimant's severe physical impairments include degenerative disc disease of the cervical and lumbar spine, knee disorder, obesity, anxiety and borderline intellectual functioning. The knee disorder stems from a workplace accident in November 2008 in which he injured his left knee. The claimant contends he has not been able to return to work since November 13, 2008 and that he has been disabled since February 15, 2009. *R. 17*.

## Analysis

### A. Standard of Review

Judicial review of the Commissioner's denial of disability benefits is limited to determining whether substantial evidence supports the decision and whether the proper legal standards were used in evaluating the evidence. *Villa v. Sullivan*, 895 F.2d 1019, 1021 (5th Cir. 1990). "Substantial evidence is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a

conclusion." *Hames v. Heckler*, 707 F.2d 162, 164 (5th Cir. 1983) Substantial evidence "must do more than create a suspicion of the existence of the fact to be established, but 'no substantial evidence' will only be found when there is a 'conspicuous absence of credible choices' or 'no contrary medical evidence.'" *Id.*

If the Commissioner's findings are supported by substantial evidence, they are conclusive and must be affirmed. 42 U.S.C. § 405(g); *Martinez v. Chater*, 64 F.3d 172, 173 (5th Cir. 1995). In reviewing the Commissioner's findings, a court must carefully examine the entire record, but refrain from re-weighing the evidence or substituting its judgment for that of the Commissioner. *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988); *Villa v. Sullivan*, 895 F.2d at 1022. Conflicts in the evidence, *Scott v. Heckler*, 770 F.2d 482, 485 (5th Cir. 1985), and credibility assessments, *Wren v. Sullivan*, 925 F.2d 123, 126 (5th Cir. 1991), are for the Commissioner to resolve, not the courts. Four elements of proof are weighed by the courts in determining if substantial evidence supports the Commissioner's determination: (1) objective medical facts, (2) diagnoses and opinions of treating and examining physicians, (3) the claimant's subjective evidence of pain and disability, and (4) the claimant's age, education and work experience. *Id.*

## B.  Entitlement to Benefits

The DIB program provides income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). If unmarried and between fifty and sixty years old, the widow of a

fully insured individual is entitled to widow's insurance benefits if she is disabled and her disability began no more than seven years after the wage earner's death or seven years after he was last entitled to survivor's benefits. 42 U.S.C. § 402(e); 20 C.F.R. § 404.335. Every individual who meets certain income and resource requirements, has filed an application for benefits, and is determined to be disabled is eligible to receive Supplemental Security Income ("SSI") benefits. 42 U.S.C. § 1382(a)(1) & (2).

A person is disabled "if he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claimant is disabled only if his physical or mental impairment or impairments are so severe that he is unable to not only do his previous work, but cannot, considering his age, education, and work experience, participate in any other kind of substantial gainful work which exists in significant numbers in the national economy, regardless of whether such work exists in the area in which the claimant lives, whether a specific job vacancy exists, or whether the claimant would be hired if he applied for work. 42 U.S.C. § 1382c(a)(3)(B).

## C. Evaluation Process and Burden of Proof

The Commissioner uses a sequential, five-step approach to determine whether a claimant is so disabled.  This process requires the ALJ to determine whether the claimant (1) is currently working; (2) has a severe impairment; (3) has an impairment listed in or

4

medically equivalent to those in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) is able to do the kind of work he did in the past; and (5) can perform any other work. 20 C.F.R. §§ 404.1520(a)(4). "A finding that a claimant is disabled or is not disabled at any point in the five-step review is conclusive and terminates the analysis." *Greenspan v. Shalala*, 38 F.3d 232, 236 (5th Cir. 1994).

Before going from step three to step four, the Commissioner assesses the claimant's residual functional capacity, 20 C.F.R. § 404.1520(a)(4), by determining the most the claimant can still do despite his physical and mental limitations based on all relevant evidence in the record. 20 C.F.R. § 404.1545(a)(1). The claimant's residual functional capacity is used at the fourth step to determine if he can still do his past relevant work and at the fifth step to determine whether he can adjust to any other type of work. 20 C.F.R. § 404.1520(e).

The claimant bears the burden of proof on the first four steps; at the fifth step, however, the Commissioner bears the burden of showing that the claimant can perform other substantial work in the national economy. *Graves v. Colvin*, 837 F.3d 589, 592 (5th Cir. 2016). This burden may be satisfied by reference to the Medical-Vocational Guidelines of the regulations, by expert vocational testimony, or by other similar evidence. *Fraga v. Bowen*, 810 F.2d 1296, 1304 (5th Cir. 1987). If the Commissioner makes the necessary showing at step five, the burden shifts back to the claimant to rebut this finding. *Id.* at 1302; *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005). If the Commissioner determines that

the claimant is disabled or not disabled at any step, the analysis ends. *Greenspan*, 38 F.3d at 236.

### D.  <u>The ALJ's Findings and Conclusions</u>

In this case, the ALJ determined, at step one, that the claimant has not engaged in substantial gainful activity since February 15, 2009. (Tr. 26). This finding is supported by substantial evidence in the record.

At step two, the ALJ found that the claimant has the following severe impairments: degenerative disc disease of the cervical and lumbar spine, knee disorder, obesity, depression, anxiety, and borderline intellectual functioning. (Tr. 27). This finding is supported by substantial evidence in the record.

At step three, the ALJ found that the claimant has no impairment or combination of impairments that meets or medically equals the severity of a listed impairment. Specifically, the ALJ considered Listing 1.04 for spinal impairments, but determined that Plaintiff's ailments did not satisfy the criteria for this Listing. (Tr. 27). The claimant challenges this finding.

The ALJ then found that the claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), except that Plaintiff was further functionally limited such that he should never climb ladders, ropes, and scaffolds; only occasionally climb ramps and stairs; and only occasionally balance, stoop, crouch, kneel, and crawl (Tr. 29). Also, Plaintiff could not work with moving and/or dangerous machinery; work at unprotected heights; or perform commercial driving. *Id*. Plaintiff was

6

further restricted to unskilled work involving only routine, repetitive tasks and no more than occasional direct contact with the public. *Id.* The claimant challenges this finding.

At step four, the ALJ found that the claimant is not capable of performing any past relevant work, which included work as a cashier and as a recreational aide (Tr. 40). The claimant did not challenge this finding.

At step five, the ALJ found that the claimant was capable of performing other work that exists in significant numbers in the national economy in the following occupations: 1) housekeeping cleaner, price marker and router. (Tr. 41). The claimant challenges this finding.

## E.  The Allegations of Error

The claimant contends that the ALJ erred by (1) failing to give appropriate weight to the medical opinion of Plaintiff's treating physicians; (2) failing to cite substantial evidence to support her conclusion that the claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments, in particular 1.04A, spinal impairment; (3) relying solely upon the testimony of the vocational expert; and, (4) failing to re-contact the treating sources to clarify or fully develop the medical record.

### (1) Did the ALJ Err in Evaluating the Treating and Examining Physicians' Opinions

The claimant contends that the ALJ erred in evaluating the medical opinions from the three "treating physicians" involved in this case: Dr. Michael E. Heard, Dr. Steven

Wyble and Dr. Donald D. Dietze. Specifically, he contends the ALJ afforded more weight to emergency room records over the substantial weight from his "treating physicians," substituting her own opinion for the medical evidence. *R. 17.*

The Social Security regulations and rulings explain how medical opinions are to be weighed. 20 C.F.R. § 404.1527(c), § 416.927(c), SSR 96-2p, SSR 96-5p. Generally, an ALJ must evaluate all of the evidence in the case and determine the extent to which medical source opinions are supported by the record. Disability cases typically involve three types of physicians: 1) a treating physician who regularly provides care to the claimant; 2) an examining physician who conducts a one-time physical exam of the claimant; and 3) a reviewing or non-examining physician who has never examined the claimant, but read the claimant's files to provide guidance to an adjudicator. A treating physician's opinion regarding the nature and severity of a patient's condition should be accorded great weight in determining disability and will normally be given controlling weight *if* it is (1) well-supported by medically acceptable clinical and laboratory diagnostic techniques and (2) not inconsistent with other substantial evidence. *Newton v. Apfel*, 209 F.3d 448, 455 (5th Cir.2000); 20 C.F.R. § 404.1527(d)(2). The ALJ may, however, give less weight, little weight, or no weight, to the medical opinion of a treating physician when good cause is shown. *Greenspan v. Shalala*, 38 F.3d 232, 237 (5th Cir. 1994). Good cause may be established when a treating physician's statements are brief and conclusory, unsupported by medically acceptable clinical laboratory diagnostic techniques, or otherwise

unsupported by the evidence. *Id.* An ALJ should provide "good reasons" for the weight given to a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2).

<u>*Dr. Heard*</u>

The claimant injured his left knee in a workplace accident in November 2008. At that time, a physical examination of the left knee by Dr. Scott E. Yerger showed full range of motion with pain at the extreme limits of the range of motion and full 5/5 motor strength with flexion and extension of the left knee. (Tr. 421). An MRI study ordered by Dr. Heard in January 2009, indicated a "mild" separation in the lateral meniscus. (Tr. 469). In a December 15, 2009 evaluation, Dr. Heard's examination noted that the claimant's knee pain was 4/10 in intensity and constant over the medial left knee. Plaintiff was described as having full range of motions, no limp and mild effusion. Dr. Heard noted the claimant was waiting for authorization from the worker's compensation carrier for a recommended left knee arthroscopy. He then recommended that the claimant was approved for light and sedentary activities "but unable to work." (Tr. 455). The claimant continued to see Dr. Heard regularly through May 11, 2010. (Tr. 451). The notes from those visits indicated no examination by Dr. Heard, only limited history from the claimant. The majority of Dr. Heard's notes indicated no significant changes in pain, that the claimant had no limp with intact neurovascularity in his left knee.

The ALJ assigned little weight to the conclusory opinion made by Dr. Heard on the claimant's initial office visit on May 19, 2009—that he "is unable to work." (Tr. 32, 467-

68). The ALJ explained that "Dr. Heard's blanket statement" was "not really a   medical opinion at all, but rather an administrative finding dispositive of a case." (Tr. 32). As Dr. Heard's opinion was not well-supported by medically acceptable clinical and laboratory diagnostic techniques and not consistent with other substantial evidence, the ALJ correctly assigned little weight. *See Newton v. Apfel*, 209 F.3d at 455; 20 C.F.R. § 404.1527(d)(2).

The ALJ further considered the opinions of the orthopedic surgeon, Dr. Malcolm Stubbs, who performed the arthroscopic surgery on the claimant's left knee on October 8, 2010. (Tr. 221). Dr. Stubbs' physical examinations of the claimant indicated that while he still had pain in the left knee he had full 5/5 motor strength and motor and sensory functions within normal limits. In May 2011, the treatment notes stated that the claimant still complained of 4/10 pain and an occasional popping sensation in the left knee, however, his examination results were all normal. Plaintiff's examinations remained essentially unchanged, and in an October 2011 physical examination, Dr. Stubbs opined that he was fit for sedentary to light duty work. (Tr. 233). That the ALJ gave "substantial weight" to Dr. Stubbs' opinion, further supports her decision to assign "little weight" to Dr. Heard's statement that the claimant was "disabled."

*Dr. Wyble*

Dr. Wyble provided the claimant pain management on January 28, 2013 through January 15, 2014. In his January 28, 2013 office visit, the claimant also began complaining of right knee pain. Dr. Wyble's report included diagnoses, restrictions and

recommendations. (Tr. 256). Dr. Wyble diagnosed the claimant with: Chronic Pain Syndrome, Cervical Spondylosis-Neck Pain, Lumbar Spondylosis-Back Pain, Left Knee Pain, Depression, Anxiety and Right Knee Pain Secondary to Altered Gait. His prescriptions included Lortab as well as Klonopin and Lexapro for anxiety and depression.

Based on the claimant's complaint of right knee pain, an MRI of the right knee was performed on March 21, 2013. The MRI revealed myxoid degeneration of the posterior horn of the medial meniscus, a pattern of bursitis of the medial collateral ligamentous complex, and a pattern of prepatellartendon bursitis. (Tr. 372). Notwithstanding these diagnostic findings indicating right knee problems, Dr. Wyble's treatment notes in March 2013 indicate that Plaintiff's use of medication allowed him to do his "everyday activities" despite his right knee problems. (Tr. 239).[1]

Also on March 21, 2013, Dr. Wyble ordered MRIs of the claimant's spine based on his complaints of back and neck pain. The MRI of the cervical spine indicated posterior herniation of the C4-5 and C5-6 intervertebral discs. The MRI of the lumbar spine indicated posterior bulging of the L3-4, L4-5 and L5-S1 intervertebral discs. As noted by the ALJ the Radiographic Summaries of the cervical and lumbar spine made no mention of stenosis of any kind. (Tr. 477, 482-83).

Thereafter, the claimant began a dorsal column stimulation trial which was later stated to be successful. Dr. Wyble opined that the claimant was temporarily home bound

---

1 In an October 24, 2013 office visit, Dr. Heard indicated that the claimant's medications as supplied by Dr. Wyble were adequate. (Tr. 497).

due to limited mobility from the spinal procedure. He restricted the claimant to lifting no more than 5 pounds, no overhead reaching, no twisting and no extreme neck motions or bending at the waist. (Tr. 246; 278).

As these physical limitations were temporary while the claimant's surgery wound healed, the ALJ gave them little weight in determining the claimant's residual functional capacity as they would not be applicable for 12 continuous months. (Tr. 35). The ALJ noted the claimant's function report indicating he had no problem with daily activities such as dressing, bathing and personal care. (Tr. 179).[2]

*Dr. Dietze*

In January 2014, the claimant had a repeat MRI of the cervical and lumbar spine. In February of 2014, he scheduled an appointment with Dr. Dietze regarding his neck and back pain. (Tr. 522). Dr. Dietze reviewed the claimant's MRI scans and opined that the claimant had "C4-5 and C5-6 disc-osteophyte complexes resulting in multilevel spinal stenosis with evidence of ligamentous laxity at the C5-6 level." (Tr. 525). Dr. Dietze also diagnosed cervical kyphosis and C4-C5 and C5-C6 disc-osteophyte complexes resulting in multilevel spinal stenosis with evidence of ligamentous laxity at the C5-C6 level. (Tr. 525). Just as with the March 21, 2013 MRI, there was no indication of any spinal stenosis. (Tr. 407, 413). The ALJ noted that despite some positive findings on Dr. Dietze's physical

---

[2] In a March 11, 2014 office visit with the claimant's family doctor, Tiffany Roy, the claimant requested prescriptions for Klonopin and Lexapro as his lawyer had fired Dr. Wyble. (Tr. 608).

examination of the claimant, there were "many normal findings"—normal reflexes and coordination, muscle strength and tone (except for slightly diminished 4/5 right had intrinsic weakness). (Tr. 36) *citing* (Tr. 499).

Dr. Dietze performed neck surgery on April 22, 2014. The claimant continued to report some neck pain post-operatively. (Tr. 504). In a follow-up examination performed on May 6, 2014, Dr. Dietze noted no significant upper extremity symptoms and indicated that the claimant reported being "very pleased with his recovery thus far." (Tr. 518).

Dr. Dietze's "Preoperative Diagnosis" and his "Postoperative Diagnosis" of the claimant's cervical and lumbar condition were the same: "1. Cervical brachial pain syndrome; 2. C3-4 disc herniation; 3. C4-5 and C5-6 disc disorder." (Tr. 528). His examination and surgery notes provide no functional limitations nor any opinion as to recommendations for future treatment. Based on the claimant's three encounters with Dr. Dietze and his failure to provide any opinion as to the claimant, the ALJ had no reason to assign weight.

While determining the ultimate issue of disability status is reserved to the ALJ, the ALJ is required to consider all medical opinions in making that determination. 20 C.F.R. § 404.1527(b), (d). Because the determination of disability always remains the province of the ALJ, the ALJ can decrease the weight assigned to a treating physician's opinion for good cause, which includes disregarding statements that are brief and conclusory, unsupported by acceptable diagnostic techniques, or otherwise unsupported by the

evidence. *Leggett v. Chater*, 67 F.3d 558, 566 (5th Cir. 1995). Here, the ALJ had "good cause" for assigning little or no weight to the opinions of Dr. Heard, Dr. Wyble and Dr. Dietz.

### (2) Did the ALJ Err in Failing to Recontact Physicians or Order a Consultative Examination

20 C.F.R. § 404.1512(e)(1) was repealed effective March 26, 2012 and a new permissive regulation (i.e., § 404.1520b) replaced the former mandatory requirement of § 404.1512(e). Stated more simply, the ALJ may, but is not required to, re-contact a medical source under § 404.1520b. This regulation was in effect when the ALJ issued her decision on November 26, 2016; therefore, the law did not mandate that the ALJ re-contact the claimant's physicians. If the record is sufficient to establish whether the claimant is disabled, as it is here, then the Regulations do not require the ALJ to order more evidence. *Jones v. Astrue*, 691 F.3d 730, 733 (5th Cir. 2012); *see also Holifield v. Astrue*, 402 Fed.Appx. 24, 27 (5th Cir. 2010) ("Because the record in this case contains medical opinion evidence from treating physicians ... the ALJ had no duty to recontact [a doctor that submitted an unsubstantiated report]."). The Regulations only require the ALJ to request more evidence if the evidence from the treating physician or psychologist or other medical source is inadequate. *Jones*, 691 F.3d at 733.

### (3) Did the Claimant's Impairments Meet or Equal a Listed Impairment?

The claimant argued that the ALJ erred in failing to cite substantial evidence to support her conclusion at Step Three of the sequential analysis—that the claimant does not

have an impairment or combination of impairments that meets or medically equals the severity of a listed impairment.

If a claimant is not working and is found to have a severe impairment at step two that meets the duration requirement, the ALJ must determine at step three whether the claimant's impairment meets or medically equals one of the impairments listed in the regulations. *Compton v. Astrue*, 2009 WL 4884153, at *6 (N.D. Tex. Dec. 16, 2009) (citing 20 C.F.R. § 404.1520). If the claimant's impairment meets or medically equals a listed impairment, the disability inquiry ends, and the claimant is entitled to benefits. 20 C.F.R. § 404.1520(d). The claimant has the burden of proving that his impairment or a combination of impairments meets or medically equals one of the listings. *Id.; Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990) (*per curiam*). Therefore, "[a]n ALJ's failure to set out a basis for his decision at Step Three affects substantial rights when the claimant appears to have met the burden to demonstrate that she meets or equals a listing." *Morin v. Berryhil*l, 2018 WL 4559000, at *4 (W.D. Tex. Sept. 21, 2018) (citing *Audler v. Astrue*, 501 F.3d 446, 449 (5th Cir. 2007)).

The burden imposed on the claimant at Step Three requires the claimant to identify the medical signs and laboratory findings that support all of the criteria of a particular listing. *McCaskill v. Dep't of Health & Human Servs.*, 640 Fed. App'x 331, 334 (5th Cir. 2016). *See, also, McCuller v. Barnhart*, 72 Fed. App'x 155, 158 (5th Cir. 2003). When a claimant fails to meet this burden, "courts must conclude that substantial evidence supports

the ALJ's finding that Listings-level impairments are not present." *Washington v. Barnhart*, 413 F.Supp.2d 784, 793 (E.D. Tex. 2006) (citing *Selders v. Sullivan,* 914 F.2d 614, 620 (5th Cir. 1990)). *See, also, Heck v. Colvin*, 674 Fed. App'x 411, 415 (5th Cir. 2017)). Whether an impairment or a combination of impairments meets a listing is a medical question that can be answered only by medical evidence. 20 C.F.R. §§ 404.1526(b), 416.926(b); *McCuller v. Barnhart*, 72 Fed. App'x 155, 158 (5th Cir. 2003. The specified medical criteria of a listing are deliberately designed to be demanding and stringent because they lead to a presumption of disability, making further inquiry unnecessary. *Anderson v. Astrue*, 2011 WL 3331821, at *6 (N.D. Tex. July 11, 2011), report & recommendation adopted, 2011 WL 3347857 (N.D. Tex. July 29, 2011) (citing *Sullivan v. Zebley*, 493 U.S. 521, 532 (1990); *Falco v. Shalala*, 27 F.3d 160, 162 (5th Cir. 1994)). For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is "equivalent" to a listed impairment, the claimant must present medical findings equal in severity to all the criteria for the one most similar listed impairment. *Sullivan v. Zebley*, 493 U.S. at 531. "A claimant cannot qualify for benefits under the 'equivalence' step by showing that the overall functional impact of his unlisted impairment or combination of impairments is as severe as that of a listed impairment." *Id.* Furthermore, the ALJ has the responsibility for deciding medical equivalence. 20 C.F.R. § 416.926(e).

Here, the claimant contends that he meets the required criteria of Listing 1.04A. Listing 1.04 provides for presumptive disability for spinal disorders, stating that a claimant

will be found disabled if he has:

> Disorders of the spine (e.g., herniated nucleus pulposus, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthrosis, vertebral fracture), resulting in compromise of a nerve root (including the cauda equina) or the spinal cord. With:
>
> A. Evidence of nerve root compression characterized by neuro-anatomic distribution of pain, limitation of motion of the spine, motor loss (atrophy with associated muscle weakness or muscle weakness) accompanied by sensory or reflex loss and, if there is involvement of the lower back, positive straight-leg raising test (sitting and supine); or
>
> B. Spinal arachnoidities, confirmed by an operative note or pathology report of tissue biopsy, or by appropriate medically acceptable imaging, manifested by severe burning or painful dysesthesia, resulting in the need for changes in position or posture more than every 2 hours; or
>
> C. Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in the inability to ambulate effectively....

20 C.F.R., Pt. 404, Subpt. P, App. 1, § 1.04. "These physical findings must be determined on the basis of objective observation during the examination and not simply a report of the individual's allegation...." *Id*. § 1.00D. "Observations of the individual during the examination should be reported[,] e.g., how he gets on and off the examination table." *Id*. § 1.00E. "Inability to walk on the heels or toes, to squat, or to arise from a squatting position ... may be considered evidence of significant motor loss." *Id*. For musculoskeletal impairments, like disorders of the spine, a claimant must demonstrate either an "inability to ambulate effectively on a sustained basis..., or the inability to perform fine and gross movements effectively on a sustained basis." *Audler v. Astrue*, 501 F.3d at 449 (citing 20

C.F.R. Part 404, Subpt. P, App. 1, § 1.00(B)(2)).

Moreover, in addition to demonstrating all of the Listing 1.04A criteria, the claimant must also demonstrate that he met the listing criteria for a period that lasted or is expected to last at least twelve months. *Woods v. Colvin*, 2015 WL 5311142, at *12 (N.D. Tex. Aug. 26, 2015), adopted by, 2015 WL 5319926 (N.D. Tex. Sept. 10, 2015); *see also* 20 C.F.R. Part 404, Subpt. P, App. 1, § 1.00(B)(2). Here, the claimant's clinical findings do not show the sensory, reflex, or motor loss required by Listing 1.04. In a March 20, 2013 examination, Dr. Wyble noted that tests performed at C-4 through T-1 indicated normal sensory reaction bilaterally and normal muscle strength. (Tr. 243). In a September 3, 2010 evaluation, Dr. Stubbs noted that the claimant's "motor and sensory is completely within normal limits." (Tr. 437). Additionally, the claimant's records do not indicate nerve root compressions on a prolonged basis. In the claimant's March 21, 2013 pre-surgery MRI scan of his cervical spine, the evaluator noted a "suggestion" of right C5 and bilateral C6 nerve root symptomology. (Tr. 354, 484). When Dr. Dietze performed the decompression surgery on April 22, 2014, he reported, "At all levels, complete decompression of the spinal cord and exiting nerve roots was accomplished." (Tr. 529).

The ALJ considered listing 1.04A and found that "the claimant's medical records provided insufficient evidence to show sensory, reflex, or motor loss, or limitation of range of motion to meet or medically equal the criteria of that listing." (Tr. 27). The ALJ further considered listings 1.04B and C and determined that claimant's medical records failed to

meet either of those listings. Thus, the claimant did not make the type of showing that would trigger the ALJ's duty to present a more exhaustive analysis at Step Three. Instead, the claimant failed to establish that he meets or equals a listing. While she did not engage in a step-by-step analysis of any set of listing criteria or the medical evidence that might support the criteria, procedural perfection in administrative proceedings is not required if the substantial rights of a party are not affected, *Audler v. Astrue*, 501 F.3d at 448, and those rights are affected at Step Three only when it appears that the claimant has satisfied his burden.

"For a claimant to show that his impairment matches [or meets] a listing, it must meet all of the specified medical criteria." *Sullivan v. Zebley* , 493 U.S. 521, 530 (1990); *Selders v. Sullivan*, 914 F.2d 614, 619 (5th Cir. 1990). Because there was substantial evidence in the record to support the ALJ's decision, the claimant failed to satisfy his burden of proving that his impairments meet or equal the criteria of a listing. This argument lacks merit.

### (4) Additional Evidence Plaintiff Submitted to the Appeals Council

The claimant contends that he submitted reports from Joseph W. Turnipseed, M.D. (dated May 8, 2014)[3], Louis C. Blanda, Jr., M.D. (dated October 11, 1994), and Cornelius E. Gorman, II (dated January 7, 2013 through March 11, 2013) for the first time to the Appeals Council. He contends that these reports constitute new and material evidence requiring reversal or remand. *R. 17 at p.13-14*.

---

3 While the Appeal Council's records do not reflect that Dr. Turnipseed's records were received, Dr. Turnipseed's May 8, 2014 examination of the claimant is in the administrative record. (Tr. B5F/539-541).

The Appeals Council denied review under the agency's new regulations as to Dr. Blanda's report and Dr. Gorman's reports, because it determined that these reports did "not show a reasonable probability that it would change the outcome of the decision." (Tr. 2). 20 C.F.R. §§ 404.970(a)(5), 416.1470(a)(5) (2018). As to Dr. Turnipseed's report, while the Appeals Council did not indicate reviewing this report, the Court must assume that the report was not considered since it was "not new because it is a copy of exhibit [B5F] pgs. [535-541]" just as the Appeals Council denied review of the report of Dr. F.T. Friedberg, pH.D. because it was already in the record. (Tr. 2).

In deciding whether to deny the claimant's request for review, the Appeals Council must consider and evaluate any "new and material evidence" that is submitted, if it relates to the period on or before the ALJ's decision. 20 C.F.R. § 404.970(b). If the Appeals Council finds that the ALJ's "action, findings, or conclusion is contrary to the weight of the evidence currently of record," the Appeals Council will then review the case. *Id.* Otherwise, it will deny the claimant's request for review. The regulations do not require the Appeals Council to provide a discussion of the newly submitted evidence or give reasons for denying review.[4] *See Meyer v. Astrue*, 662 F.3d 700, 706 (4th Cir.2011) ("Only if the Appeals Council grants a request for review and issues its own decision on the merits is the Appeals Council required to make findings of fact and explain its reasoning."). On the

---

4  "[T]he requirement of a detailed discussion of additional evidence was suspended by a memorandum from the Executive Director of Appellate Operations dated July 20, 1995." *Higginbotham v. Barnhart*, 405 F.3d 332, 335 (5th Cir. 2005).

other hand, when the Appeals Council denies the claimant's request for review, as it did in this case, that denial becomes part of the Commissioner's final decision, *Higginbotham*, 405 F.3d at 336–37, but the ALJ's decision remains binding, 20 C.F.R. § 404.981.

The claimant relies on *Epps v. Harris*, 624 F.2d 1267 (5th Cir.1980) to support his position that the Appeals Council should have evaluated the newly submitted evidence. Aside from the fact that *Epps* was decided in 1980—before the July 20, 1995 suspension— it is distinguishable in that *Epps* involved the Appeal Council's affirmation and adoption of the ALJ's decision rather than the Appeal Council's denial of a request for review as in this case. The claimant's argument has no merit.

### (5) Whether the Hypotheticals Posed to the Vocational Expert in Step 5 Were Based on Substantial Evidence

The claimant argues that because the ALJ failed to properly evaluate (1) the opinions of treating physicians, and (2) the additional evidence in the record the hypothetical questions to the vocational expert were invalid and should be discarded. The Court has addressed the claimant's arguments that the ALJ erred in evaluating the opinions of the treating physicians and in not considering the additional evidence and has determined that these arguments lack merit. In light of the findings in the foregoing, the Court will consider the ALJ's step five analysis of the claimant's disability.

At step five, the ALJ consulted a vocational expert who testified that an individual with the claimant's age, education, work experience, and RFC can perform work which is light in exertion and unskilled in nature. "Such testimony constitutes substantial evidence

when the hypothetical question which elicited it incorporates all disability that the ALJ has found, the disabilities recognized by the ALJ are reasonable under the evidence, and the ALJ's ultimate determination is consistent with the expert vocational testimony." *Lastrape v. Barnhart*, 376 F. Supp. 2d 704, 715 (2005).

Here, the ALJ gave great weight to the residual functional assessment of the State agency's physical medical consultant, a medical doctor, who opined that the claimant is restricted to work at the light exertional level. The ALJ found that the assessment was "generally consistent with the objective medical evidence of record." *Tr. 39*. The ALJ also found that the claimant had further non-exertional postural and environmental physical limitations. *Id.* While the ALJ gave some weight to the assessment of the State Agency's mental medical consultant's finding that the claimant's mental impairments were non-severe, he also gave some weight to the findings of Sandra Friedberg, Ph.D., as substantiating that the claimant's mental impairment had more than a minimal effect on his ability to perform work activities.

With these finding, the ALJ posited the following hypothetical question to the vocational expert, "I would like for you to consider an individual who is limited to light work, and can never climb ladders, ropes, or scaffolds, but can occasionally climb ramps and stairs. And is able to occasionally balance, stoop, crouch, kneel, and crawl. The individual cannot work with moving and/or dangerous machinery. Cannot work at unprotected heights. And cannot engage in commercial driving. And the individual is

limited to unskilled work that involves routine, repetitive tasks." *Tr. 70-71.* In response, the vocational expert stated that the claimant's past work would be eliminated, but then cited examples of alternative jobs in the national economy taking these restrictions into account—housekeeping cleaner, price marker and router. *Tr. 71-72.* The ALJ then posed one additional restriction, "the individual should work generally with things rather than people and should only have occasional interaction with coworkers and supervisors." *Tr. 72.* The vocational expert responded that this restriction would eliminate the router job but an alternative job would be document preparer. *Id.* The Court finds that the ALJ's reliance on such testimony was valid and his determination is supported by substantial evidence.

## **Conclusion and Recommendation**

For the foregoing reasons, this Court recommends that the Commissioner's decision be AFFIRMED and this matter be dismissed with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Rule Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from receipt of this report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after receipt of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of receipt, or within the time frame authorized by Fed. R. Civ. P.

6(b) shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996).

**THUS DONE AND SIGNED** this 20th day of March, 2019.

_____
**CAROL B. WHITEHURST**
**UNITED STATES MAGISTRATE JUDGE**